ATTORNEY'S NAME:   Sternberg, Scott L 33390
AND ADDRESS:          935 Gravier Street 2020, New Orleans, LA 70112

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2021-00590          DIVISION: J          SECTION: 15

### LANDRY, JOHNNY JACOB

Versus

### STATE OF LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY SERVICES ET AL

### CITATION

TO:     THOMAS, TROY

1450 POYDRAS STREET, SUITE 1600, NEW ORLEANS, LA 70112

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA March 5, 2021**

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Kasie Jiles, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this_____ day of_____ _____ served a copy of the within | On this_____ day of_____ _____ served a copy of the within |
| PETITION | PETITION |
| ON  THOMAS, TROY | ON  THOMAS, TROY |
| THROUGH: | THROUGH: |
|  | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said THOMAS, TROY  being absent from the domicile at time of said service. |
| Returned the same day _____ No._____ | Returned the same day _____ No._____ |
| Deputy Sheriff of_____ | Deputy Sheriff of_____ |
| Mileage: $_____ | |
| _____/ ENTERED /_____ | |
| PAPER            RETURN | |
| _____/            /_____ | |
| SERIAL NO.     DEPUTY     PARISH | |

RECEIVED

MAR 2 6 2021

DCFS GENERAL COUNSEL

ID: 10649440          Page 1 of 1

ATTORNEY'S NAME:  Sternberg, Scott L 33390
AND ADDRESS:        935 Gravier Street 2020, New Orleans, LA 70112



## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2021-00590                    DIVISION: J                    SECTION: 15

LANDRY, JOHNNY JACOB

Versus

### STATE OF LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY SERVICES ET AL

### CITATION

TO:          WALTERS, MARKETA GARNER

627 NORTH FOURTH STREET, BATON ROUGE, LA 70802

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA March 5, 2021**

Clerk's Office, Room 402, Civil Courts          CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                               The Civil District Court
New Orleans, LA                                 for the Parish of Orleans
                                                State of LA
                                                by
                                                Kasie Jiles, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| PETITION | PETITION |
| ON WALTERS, MARKETA GARNER | ON WALTERS, MARKETA GARNER |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said WALTERS, MARKETA GARNER being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff | Returned the same day |
| Mileage: $ _____ | _____ No. _____ |
| _____ / ENTERED / _____ | Deputy Sheriff of _____ |
| RETURN | |
| SERIAL NO.        DEPUTY        PARISH | |

2021 MAR 15 PM 3: 29
ORLEANS PARISH
SHERIFF'S OFFICE

ID: 10649439                                    Page 1 of 1

ATTORNEY'S NAME:  Sternberg, Scott L 33390
AND ADDRESS:        935 Gravier Street 2020, New Orleans, LA 70112

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

| NO: 2021-00590 | DIVISION: J | SECTION: 15 |
|---|---|---|

**LANDRY, JOHNNY JACOB**

Versus

**STATE OF LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY SERVICES ET AL**

### CITATION

TO:        LOUISIANA STATE ATTORNEY GENERAL'S OFFICE

1885 NORTH THIRD STREET, BATON ROUGE, LA 70802

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA March 5, 2021**

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by _Kasie Jiles_
Kasie Jiles, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this_____ day of_____ _____ served a copy of the within | On this_____ day of_____ _____ served a copy of the within |
| PETITION | PETITION |
| ON LOUISIANA STATE ATTORNEY GENERAL'S OFFICE | ON LOUISIANA STATE ATTORNEY GENERAL'S OFFICE |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said LOUISIANA STATE ATTORNEY GENERAL'S OFFICE being absent from the domicile at time of said service. |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER          RETURN | Deputy Sheriff of _____ |
| _____ / _____ | |
| SERIAL NO.    DEPUTY    PARISH | |

RECEIVED BY THE
ATTORNEY GENERAL'S OFFICE
DATE: 4/9/21   TIME: 11:25 AM
BY: _____

ID: 10649441                    Page 1 of 1

2021-00590

**J**

**Section 15**

FILED
2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. _____                    DIVISION: ____

COURTNEY LANDRY, JOHNNY JACOB LANDRY, BOTH INDIVIDIUALLY AND
ON BEHALF OF THEIR MINOR CHILDREN, C.L., J. L., AND L.L.

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, TROY THOMAS, AND MARKETA GARNER WALTERS

FILED: _____         _____
                                         DEPUTY CLERK

<u>PETITION</u>

1.

Your Petitioners, **COURTNEY LANDRY, JOHNNY JACOB LANDRY, BOTH
INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, C.L., J.L. AND
L.L.** (hereinafter referred to as "**PETITIONERS**" or the "**LANDRY FAMILY**"), are a family of
two adults of the age of majority and their three natural minor children residing in Orleans Parish,
Louisiana.

2.

Made Defendants herein are:

- **STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY
  SERVICES** (hereinafter referred to as "**DCFS**"), is a body politic enjoying the right to
  be sued in this state with its principal office in Baton Rouge, Louisiana.

- **MARKETA GARNER WALTERS, IN HER OFFICIAL CAPACITY AS
  SECRETARY, DCFS, STATE OF LOUISIANA,** (hereinafter referred to as
  "**WALTERS**"), is the secretary and de facto head of DCFS.

- **MARKETA GARNER WALTERS, IN HER INDIVIDUAL CAPACITY,** an
  employee of DCFS.

- **TROY THOMAS, IN HER INDIVIDUAL CAPACITY,** an employee of DCFS,
  who on information and belief resides in Orleans Parish, Louisiana and performed
  numerous acts on behalf of DCFS in this Parish.

3.

At various times mentioned herein **TROY THOMAS** was at all relevant times an
employee of **MARKETA GARNER WALTERS ("WALTERS") and DCFS.** Accordingly,
**WALTERS** and **DCFS** are liable to **PLAINTIFFS** both for their own independent actions, and
under the doctrine of *respondeat superior*.

RECEIVED
MAR 2 6 2021
DCFS GENERAL COUNSEL

VERIFIED
Yanley Salazar
2021 JAN 22  P 01:28

E-Filed

**J**

Section 15

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

## JURISDICTION AND VENUE

4.

This Court has jurisdiction over this lawsuit as it seeks damages and declaratory relief in an amount greater than the jurisdictional limit.

5.

Venue is proper in this district as Defendant **TROY THOMAS** is a resident of this district and, alternatively, under Louisiana Code of Civil Procedure Art. 74 as the damages from the "offense or quasi offense" occurred in this judicial district.

## INTRODUCTION

6.

This matter is an action for Damages pursuant to Louisiana tort law and a 28 U.S.C. §1983 action for First Amendment retaliation arising out of the gross, intentional, wanton and outrageous conduct of the **DEFENDANTS**, acting in concert, and with malice aforethought. The **DEFENDANTS'** actions were calculated, documented, and real. The **LANDRY FAMILY** is forever damaged by the callous and retaliatory actions of the **DEFENDANTS** individually and on behalf of the state of Louisiana's Department of Childrenren and Family Services.

7.

The **DEFENDANTS'** actions intentionally retaliated against and harmed the **LANDRY FAMILY** for daring to speak out, and, later, for their First Amendment protected expression, and **DEFENDANTS** were further negligent in leaving a 22-month-old foster child at significant risk to be psychologically damaged for life.

8.

**DEFENDANTS'** actions detailed herein (and which will be thoroughly examined in discovery) show that **DEFENDANTS** have a pattern and practice of incompetence, reckless behavior, wantonly ignore their own adopted policies, use their positions of power to retaliate, and are unconcerned about the long-term effects or consequences of their actions, with impunity.

## FACTS

9.

The **LANDRY FAMILY** live, work, and educate their three children in New Orleans, Louisiana, with both parents working in their family business.

J

# Section 15

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

10.

The **LANDRY FAMILY** is firmly grounded and believe strongly in their faith, moral

values, and a call to serve. The family was recruited to apply, did apply and was approved by

**DCFS** to serve as foster parents for the state's foster program.

11.

On August 28, 2018, a child (hereinafter referred to as "**BABY Z**") was born addicted to

numerous drugs.

12.

On August 29, 2018 **BABY Z** was taken into the custody of **DCFS** and hospitalized in the

NICU for 51 days – until October 19, 2018. While in the hospital, there were only 10 recorded

visits from family members.

13.

On September 15, 2018, while **BABY Z** was still in the NICU, his father died.

14.

Upon her discharge from the hospital following **BABY Z**'s birth, his mother,



15.



16.



17.

In the spring and summer of 2018, the **LANDRY FAMILY** underwent training to prepare

to serve as a foster family. They were a certified foster home and took **BABY Z** into their care at

the request of **DCFS** on October 19, 2018.

18.



E-Filed

3



2021-00590

FILED
2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

**J**

Section 15

19.

20.

The **LANDRY FAMILY** cared for **BABY Z** during his difficult and trying withdrawal period, providing around the clock care at a time when **BABY Z's**

21.

Tragically, on February 3, 2019, **BABY Z's** mother died.

22.

Upon the mother's death, **DCFS**

23.

**DCFS** investigated **BABY Z's** paternity and confirmed he was an orphan.

24.

**DCFS** then approached the **LANDRY FAMILY** about adopting **BABY Z** as he had spent his entire life with the **LANDRY FAMILY.**

25.

**DCFS** specifically told the Landrys that **BABY Z** had a half-uncle in New York, but the half-uncle had taken no steps to visit the baby.

26.

2021-00590

FILED
2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

**J**

**Section 15**

27.

By this point, **BABY Z** had been with the **LANDRY FAMILY** for six months and had documented developmental delays due to his multiple adverse experiences in utero and as an infant.

28.

After prayerful consideration, and with the support of **BABY Z's** maternal grandmother, the **LANDRY FAMILY** agreed to adopt **BABY Z**.

29.

Relying on the direct representations of DCFS, the Landrys informed their minor children that they would be adopting **BABY Z**, and that he would be their brother forever.

30.

Every day that passed strengthened the attachments between **BABY Z** and the **LANDRY FAMILY**, making them a family.

31.

All the while, under the barely present monitoring of **DCFS**, with the help of family and their church family, they rocked **BABY Z** to sleep each night.

32.

As the months passed, the **LANDRY FAMILY** established relationships with **BABY Z's** grandmother, siblings and other extended family in New Orleans and elsewhere.

33.

**BABY Z** was a loving and challenging child. ████████████████



████████████████████████████████████████████████████

██████████████████████████████.

34.

Unbeknownst to the **LANDRY FAMILY**, DCFS' case worker had ignored the half-uncle's attempts to contact **DCFS** and obtain custody of **BABY Z**.

35.

On information and belief, **DCFS's** caseworker made misrepresentations to the half-uncle, all while **DCFS** was telling the **LANDRY FAMILY** that they would be **BABY Z's** adoptive placement.

2021-00590

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

**J**

## Section 15

36.

On June 26, 2019, the half-uncle ██████████████████████████
████████████████████████████████████

37.

DCFS and **TROY THOMAS**, a DCFS adoption caseworker, deliberately failed to inform the **LANDRY FAMILY** of key facts throughout their custody, including, but not limited to, the half-uncle's legal action.

38.

In violation of the Louisiana Children's Code, and particularly art. 623, **DCFS** and **TROY THOMAS** deliberately failed to inform the **LANDRY FAMILY** about upcoming hearings relating to **BABY Z**, as they remained oblivious to the half-uncle's interest.

39.

In a text message Monday, July 29, 2019, **THOMAS** deliberately withheld information from the **LANDRY FAMILY** about the ██████████████████ and the ██████████ scheduled for the following day.

40.

████████████████████ **DCFS**, faced with its own gross negligence and malfeasance, opted to disregard the best interest of **BABY Z**.

41.

**DCFS** opted instead to reverse course from the **LANDRY FAMILY** and recklessly move to place **BABY Z** in New York with his half-uncle, with whom he had no prior relationship, but who also had custody of **BABY Z's** brother.

42.

At this point, **BABY Z** was nearly 1 year old and had been with the **LANDRY FAMILY** for over 10 months.

43.

**TROY THOMAS** scheduled an adoption paperwork meeting at the Landry home for July 30, 2019.

44.

At that meeting, she instead informed the **LANDRY FAMILY** of the half-uncle's ██████████ and that **BABY Z** would be visiting with his half-uncle.

2021-00590

**J**

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

**Section 15**

45.

At a visit in Louisiana on July 31, 2019 between **BABY Z,** then 11 months old, and his

half-uncle, ███████████████████████████████████████████████████████

██████████████████████████████████████████.

46.

Despite the Louisiana Children's Code specifically providing otherwise, DCFS employee

**TROY THOMAS** also told the **LANDRY FAMILY** that they were not allowed to have counsel

to represent them in █████████████████████████████████████████

47.

On information and belief, this knowing and intentional omission by DCFS and its agent

was motivated by its decision to transition the child to New York, and DCFS wanted to avoid any

risk that the **LANDRY FAMILY** would advocate otherwise.

48.

Upon the half-uncle's intervention, DCFS' main objective was to cover its own misdeeds,

mistakes, and gross negligence.

49.

On information and belief, DCFS feared a lawsuit from the half-uncle.

50.

To allay this fear of litigation, DCFS ignored **BABY Z's** best interest and well-being and

knowingly made material misrepresentations to the court and the **LANDRY FAMILY.**

51.

DCFS' plan to move **BABY Z** to New York, however, failed to consider, and willfully

ignored, the relevant science and its own internal policies, and particularly the science of

attachment.

52.

**BABY Z's** treating psychiatrist and Tulane Parenting Education Program's ("TPEP")

executive director had serious concerns about any disruption of **BABY Z's** attachment to the

**LANDRY FAMILY,** the only family he had ever known. DCFS willfully ignored that data.

**J**

Section 15

53.

*In fact,* DCFS' policy is to consider attachment as a significant factor for placement. DCFS

policy 6-305 states:

> [E]stablishing a care setting with a relative or fictive kin is not required if the child
> has care needs which cannot be met by the relatives/fictive kin or when disruption
> of the child's attachment and bonding with the current caregiver would cause
> significant emotional harm and trauma to the child. *See Exhibit A.*

54.

It is also **DCFS** policy, at all times, to ensure a "planful transition" if a child is to be

removed from a foster family where he has formed attachments:

> Planful Transitions are the thoughtful, collaborative processes, and actions
> designed to ease the trauma for a child, to maintain established attachments and
> connections; and, to facilitate attachment with a new caregiver and a successful
> move.  A planful transition means that those responsible for the child's well-being
> (e.g., DCFS, foster parents, biological parents, judge, attorney, providers, etc.)
> work together to ensure that the child's move is a smooth one.  Each plan must be
> individualized to each child specifically considering the child's unique
> circumstances, developmental stage, psychological needs, safety, and attachment
> to current and future caregivers. *See Exhibit A.*

55.

DCFS contracted with TPEP to assist in child in need of care cases. TPEP opined that, in

light of **BABY Z**'s special needs and secure attachment to the **LANDRY FAMILY**, an immediate

transfer to New York was not in **BABY Z's** best interest, and instead recommended a planful,

deliberate transition, if he was to be moved at all.

56.

DCFS knowingly and intentionally refused to engage with the **LANDRY FAMILY**'s

concerns about an abrupt transition to New York. When asked by the **LANDRY FAMILY** to

please involve a mental health professional in the decision, **TROY THOMAS** lied and said she

was in contact with members of the TPEP staff, even though this was untrue.

57.

Though not notified by DCFS (in violation of art. 623), the **LANDRY FAMILY** learned

of ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

58.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

# J

## Section 15

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

59.

Other than DCFS' representations, there is no evidence that TPEP had approved of the transition plan, in fact, there is evidence to the contrary.

60.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

61.

During court-ordered visitation in September 2019 to the half-uncle in New York, DCFS refused to allow a member of the **LANDRY FAMILY** to travel with **BABY Z** to ensure the travel was as least traumatic as possible on him.

62.

**TROY THOMAS** later ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

63.

There is evidence directly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was a lie calculated to advance the position of **DCFS** rather than the best interest of **BABY Z.**

64.

The **LANDRY FAMILY** observed the toddler in significant duress when he was removed from their care, and during Facetime calls while on the trip. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

65.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮.

66.

T-PEP advised DCFS that it did not agree with **DCFS'** desire to send **BABY Z** to New York. Faced with opposition to its plan, **DCFS** switched and hired a new expert who would say what they wanted: that **BABY Z** could be safely transitioned to his half-uncle in New York.

67.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**J**

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

Section 15



68.

69.

After this ruling, **TROY THOMAS** communicated with the half-uncle, telling him to call the **LANDRY FAMILY** daily via Facetime, but waited until one week prior to the next court hearing in December to inform the **LANDRY FAMILY** ▉▉▉▉▉▉▉▉▉▉▉.

70.

71.

72.

73.

74.

**TROY THOMAS** objected to the **LANDRY FAMILY's** offer to fly with **BABY Z** to New York on a second ▉▉▉▉▉▉ visit in January 2020, being dismissive of the **LANDRY**

E-Filed

10

2021-00590

FILED
2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

**J**

**Section 15**

FAMILY's offers of assistance. Despite **TROY THOMAS'** objections, ▮▮▮▮▮▮

▮▮▮▮▮ ▮▮▮▮▮

75.

Even though the **LANDRY FAMILY** reached out on three separate occasions to attempt to coordinate travel, DCFS waited until the Friday before to inform the **LANDRY FAMILY** that the trip was scheduled for Monday at 6:00 a.m., resulting in the **LANDRY FAMILY** having to cancel work trips and obligations to ensure they could travel with **BABY Z**, who was only 16 months old at the time, to save him the distress of flying with an unfamiliar **DCFS** staff member across the country.

76.

The **LANDRY FAMILY** bought their own tickets and went to New York with **BABY Z** in January 2020, comforting him in coach while **TROY THOMAS** sat in First Class at the Louisiana taxpayer's expense.

77.

While **BABY Z** was in New York, **TROY THOMAS** accidentally copied **JACOB LANDRY** on a text to the half-uncle's wife in which she instructed her to "capture as many moments as you can…there is a method to my madness."

78.

**TROY THOMAS** used her position of power and influence to ensure that **BABY Z** wound up in New York, including coaching the half-uncle on what evidence would be necessary to prove that **BABY Z** was adjusting well and could be transitioned safely to New York.

79.

**TROY THOMAS** further used her position of power to feed information to the half-uncle and disparage the **LANDRY FAMILY** repeatedly in retribution for their speaking out and advocating on behalf of **BABY Z**.

80.

**TROY THOMAS** coached the half-uncle on how to ensure that **BABY Z** would wind up in his care.

81.

When **BABY Z** returned ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2021-00590

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

J

Section 15

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

82.

TROY THOMAS and DCFS continued to dismissively and deridingly refer to the LANDRY FAMILY as "Contractors," instead of the loving family they were.

83.

The LANDRY FAMILY reached out to WALTERS in February 2020 in an attempt to communicate their concerns about THOMAS' behavior.

84.

WALTERS invited them to a meeting, at which she expressed her concern for their experience and stated that the DCFS New Orleans office was "a mess" and "we cannot be doing good work."

85.

WALTERS failed to follow up on her promises, or to call Dr. Zeanah of TPEP.

86.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## BABY Z MOVES TO NEW YORK

87.

Even as the LANDRY FAMILY fought for BABY Z to remain with them and presented evidence as to the mental and psychological harm that would certainly result from his abrupt transition to New York, they complied with requests from TROY THOMAS and their appeals to WALTERS were ignored.

88.

No matter when BABY Z was to be transferred to New York, the most logical and least disruptive means for both BABY Z and the LANDRY FAMILY would be a planful transition, which involves planned contact and an "easing" of BABY Z from one family to another.

89.

The issue of what placement would be best for BABY Z was of some debate, with the LANDRY FAMILY and a T-PEP expert believing it was in New Orleans, and DCFS ultimately

2021-00590

**J**

FILED

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

**Section 15**

changing its mind from New Orleans, eventually suggesting that placement with the half-uncle in

New York was best.

90.

Nevertheless, all of the experts who ████████ about the science of attachment agree that a

"planful transition" for **BABY Z** would be best for his mental health, and for the mental health of

the **LANDRY FAMILY**, notably their young children, who had cared for **BABY Z** for 20 months.

91.

Despite this science and the willingness of the **LANDRY FAMILY** to cooperate on a

planful transition, whereby the half-uncle and the **LANDRY FAMILY** could together transition

**BABY Z** to his new life, **DCFS**, as a final insult to the **LANDRY FAMILY**, chose to disregard

**BABY Z's** mental health, retaliate against, and irrevocably harm the **LANDRY FAMILY** and

**BABY Z.**

92.

With less than 36 hours' notice and without regard for the mental and physical health of

**BABY Z** or the **LANDRY FAMILY** and their children, **BABY Z** was forcefully taken from the

arms of the only family he had known in his 22 month life and taken by **TROY THOMAS** to New

York.

93.

**DCFS** refused to allow for a planful and deliberate transition, against the advice and

recommendations of its own experts, in violation of its own policy, and instead proceeded with the

horrifying retribution against the **LANDRY FAMILY** which amounted to an institutional

kidnapping from the perspective of the child, the **LANDRY FAMILY**, and any impartial observer.

94.

████████████████████████████████████████████

████████████████████████████████████████

95.

**DCFS** would not allow a member of the **LANDRY FAMILY** to pay their own way and

accompany **BABY Z** to New York to ease the child's pain and distress.

96.

**TROY THOMAS** told **DCFS'** expert that **BABY Z** settled after the **LANDRY FAMILY**

was out of sight and was excited to see his half-uncle. This is demonstrably false.

**J**

Section 15

97.

FILED
2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

DCFS' refusal to implement a planful transition plan is attributed to their malice toward the **LANDRY FAMILY** for having the temerity to intervene to protect **BABY Z's** best interest. DCFS has been willing to violate its own policy in this malevolent pursuit.

98.

Policy 6-305 specifically states, "Therefore, it is critical to the well-being of the child, especially children under age six, regardless of the reason for a transition from one caregiving setting to another, for the Department to collaboratively strategize with all involved caregivers of the child to reduce the trauma experienced...These transition plans should include details regarding multiple extended visits, such as overnight visits as well as other contacts such as SKYPE, FaceTime, etc. to ensure the most positive experience possible for the child. These activities should occur both prior to the move and after the move to allow the child to have a safe separation from previous caregivers and attachment to the new caregivers." In actuality, the move was immediate, even though the 22-month-old child had not visited with his uncle in well over 5 months.

99.

After the abrupt and traumatic move, the **LANDRY FAMILY** was only allowed a 10-minute weekly ZOOM call and were not given preference even as to when this call time would occur, resulting in the whole family being unable to participate.

100.

One week after the abrupt separation, with the only contact being one 10-minute call, the **LANDRY FAMILY** participated in a second call and were shocked to see large patches of **BABY Z's** hair missing, evidencing that he was continuing a known self-harming tendency that he exhibits when stressed.

101.

The **LANDRY FAMILY** brought their concerns directly to **WALTERS** asking to modify the "transition" to allow for more contact but were told to take their concerns to the DCFS psychologist.

102.

The **LANDRY FAMILY** did as instructed but received no response from the psychologist. On information and belief, DCFS continued their practice of ignoring the best interest and well-

J

Section 15

being of BABY Z to advance their own agenda.

103.

The LANDRY FAMILY attempted, through numerous channels, to plea for a reprieve or assistance from MARKETA GARNER WALTERS, and particularly informed her of TROY THOMAS' continued misrepresentations and deceitful conduct.

104.

But the LANDRY FAMILY'S pleas for help fell on indifferent ears, and DCFS continued to allow the agent to be the only eyes on BABY Z's trips to New York, allowing inaccurate accounts of these trips to persist.

105.

Finally, in July 2020, the LANDRY FAMILY was approached by the media and gave their account to a reporter for *The Times-Picayune*, who published a story about their trials and tribulations with DCFS.

106.

The day after the story was published, DCFS, with on information and belief full knowledge of TROY THOMAS and MARKETA GARNER WALTERS, retaliated for the whistleblowing and protected expression.

107.

DCFS' agent informed the LANDRY FAMILY they would have no further contact with the son they had raised for 20 months.

108.

DCFS's decision to cease contact between the LANDRY FAMILY and BABY Z was in response to the LANDRY FAMILY's decision to advocate for BABY Z's best interest in front of the juvenile court and for exposing the corruption and deceit at DCFS.

109.

DCFS' decision was in spite of the fact that all the experts retained in this case, including the expert for DCFS, had testified **under oath** that continued contact between the Landrys or the half uncle, whomever was not the adoptive placement, was essential to BABY Z.

110.

████████████████████████████████████████

████████████████████████████████████████



J

Section 15

111.

The **LANDRY FAMILY** was irrevocably and irreparably harmed by the deceit, misrepresentations, and malice occasioned by the **DEFENDANTS** jointly, individually and in their plan to retaliate against the **LANDRY FAMILY** for daring to speak up for **BABY Z**.

<u>**COUNT ONE: FIRST AMENDMENT VIOLATIONS**</u>

112.

The preceding paragraphs are incorporated here as if copied herein *in extenso*.

113.

For exercising their right to Petition the Court and speak out to the press about the corruption, lying, deceit, and misrepresentations by **DCFS** and the need for stability and/or a stable transition for **BABY Z**, the **DEFENDANTS** unlawfully retaliated against **PLAINTIFFS**, with willful and wanton disregard for the psychological well-being of the **PLAINTIFFS** and **BABY Z**.

114.

Plaintiffs aver that the **DEFENDANTS** modified the transition plan and cut off their visitation with **BABY Z** in retaliation and to punish the **LANDRY FAMILY** for the exercise of their rights of free speech and to petition the Court.

115.

Plaintiffs further aver that the **DEFENDANTS** have attempted to enforce a prior restraint against the **LANDRY FAMILY** in contravention of the First Amendment.

116.

The **LANDRY FAMILY** therefore seeks a Declaration from this Honorable Court that the **DEFENDANTS** violated their First Amendment rights to Free Speech and Right of Petition and did retaliate against the **LANDRY FAMILY**.

117.

**MARKETA GARNER WALTERS AND TROY THOMAS** in their individual capacities are also liable to **JACOB AND COURTNEY LANDRY** for damages and attorney's fees and costs as provided by 28 U.S.C. 1985 *et seq*.

<u>**COUNT TWO: FAILURE TO TRAIN/SUPERVISE**</u>

118.

The preceding paragraphs are incorporated here as if copied herein *in extenso*.

**FILED**

2021 JAN 21  P 12:31

CIVIL

DISTRICT COURT

**J**

Section 15

119.

DEFENDANTS DCFS and MARKETA GARNER WALTERS failed to properly train, observe and supervise **TROY THOMAS** and other DCFS employees who engaged in false statements, and a campaign to intentionally or negligently inflict emotional distress on the LANDRY FAMILY and BABY Z.[1]

120.

DCFS caseworkers, including **TROY THOMAS**, repeatedly provided the **LANDRY FAMILY** with false or misleading information in order to ensure they were not heard or that they appeared negligent in their duties as foster parents.

121.

DCFS failed to train its caseworkers, including **TROY THOMAS**, with accurate training on their policies.

122.

On information and belief, **TROY THOMAS** has been investigated by DCFS for prior instances of misrepresentations and lack of candor to the court.

123.

**WALTERS** and DCFS were on notice as to the deceit and malfeasance of **TROY THOMAS**, which included wanton and malicious actions toward the **LANDRY FAMILY**, but refused to take action despite such notice.

124.

The LANDRY FAMILY further avers that the previous paragraphs evidence the necessary elements that the DEFENDANTS' conduct "is 'motivated by evil intent' *or* demonstrates 'reckless or callous indifference' to a person's constitutional rights."

<u>**COUNT THREE: INTENTIONAL OR
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>

125.

The preceding paragraphs are incorporated here as if copied herein *in extenso*.

126.

The DEFENDANTS are liable to the LANDRY FAMILY for the following non-exclusive causes of action: the intentional infliction of emotional distress and the negligent

---

[1] The **LANDRY FAMILY** would bring an action on behalf of **BABY Z,** but they lack capacity to do so.

2021-00590

FILED

2021 JAN 21  P 12:31
CIVIL
DISTRICT COURT

**J** infliction of emotional distress.

**Section 15**

127.

The **DEFENDANTS** conduct was:

(i)     Extreme and outrageous.

(ii)    Causing severe emotional distress to the **LANDRY FAMILY**; and

(iii)   Intended, or should have known, they would cause the **LANDRY FAMILY** harm.

128.

**DEFENDANTS'** behavior amounts to the intentional infliction of emotional distress or, alternatively, the negligent infliction of emotional distress, as their behavior was extreme and outrageous to be beyond all the standards of decency or respect which should be present here.

129.

DCFS is liable for the damages caused by **TROY THOMAS** and **MARKETA GARNER WALTERS'** behavior under the doctrine of *respondent superior* because DCFS knew or should have known of their behavior.

130.

The **LANDRY FAMILY** suffers from and have been treated for anxiety and depression as a result of stated events.

131.

**DEFENDANTS'** punitive and malicious behavior and its effects directly inhibit **JACOB AND COURTNEY LANDRY'S** ability to be productive in the workplace and provide for their family.

132.

Particularly, the **LANDRY** children, who, through their young and tender eyes, had their baby brother stolen from them with 36 hours' notice, cried themselves to sleep for a month.

133.

DCFS' refusal to require continued contact, or substantive contact at all, between **BABY Z** and the **LANDRY FAMILY** has caused the **LANDRY FAMILY** significant emotional distress as the **LANDRY FAMILY** has no peace about **BABY Z**'s well-being.

134.

The **PLAINTIFFS** demand a trial by jury on all issues so triable.

2021-00590

**J**

Section 15

FILED
2021 JAN 21   P 12:31
CIVIL
DISTRICT COURT

WHEREFORE, Petitioners, COURTNEY LANDRY, WIFE OF/AND JOHNNY

JACOB LANDRY, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN,

C.L., J. L., AND L.L., asks that this Petition be filed and that Defendants, THE LOUISIANA

DEPARTMENT OF CHILDREN AND FAMILY SERVICES, TROY THOMAS, AND

MARKETA GARNER WALTERS, IN HER OFFICIAL CAPACITY AS SECRETARY OF

THE STATE OF LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY

SERVICES AND MARKETA GARNER WALTERS, IN HER INDIVIDUAL CAPACITY,

be duly cited and served with a copy of this Petition, to appear and answer same and that, after due

proceedings, there be judgment herein in favor of Petitioners, and against Defendants, in an amount

reasonably calculated to compensate Petitioner for their damages, including punitive damages,

together with legal interest thereon, from date of judicial demand until paid, for all costs of these

proceedings, including attorneys' fees, and all general and equitable relief this Honorable Court

may grant.

Respectfully submitted:

STERNBERG, NACCARI & WHITE, LLC

SCOTT L. STERNBERG, La. Bar No. 33390
M. SUZANNE MONTERO, La. Bar No. 21361
MICHAEL S. FINKELSTEIN, La. Bar No. 35476
935 Gravier Street | Suite 2020
New Orleans, LA 70112
Telephone:  504.324.2141
Facsimile:  504.534.8961
scott@snw.law | suzy@snw.law | michael@snw.law

*For the Petitioners*

PLEASE SERVE:

STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES
627 NORTH FOURTH STREET
BATON ROUGE, LOUISIANA 70802

MARKETA GARNER WALTERS
627 NORTH FOURTH STREET
BATON ROUGE, LOUISIANA 70802

TROY THOMAS
1450 POYDRAS STREET SUITE 1600
NEW ORLEANS, LA  70112

LOUISIANA STATE ATTORNEY GENERAL'S OFFICE
1885 NORTH THIRD STREET
BATON ROUGE, LA 70802

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA